# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| ANDREA B. GALE, an individual, and as Trustee of Andrea Beryl Gale Revocable Living Trust, | ) ) ) ) | Case No.: 2:12-cv-02065-GMN-VCF |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| CITIMORTGAGE, INC.; NATIONSTAR MORTGAGE, LLC; CAL-WESTERN RECONVEYANCE CORPORATION; QUALITY LOAN SERVICE as trustee, and DOES 1 through 10, and ROE CORPORATIONS 1 through 10, inclusive, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) | |
| Indispensable Party. | ) ) ) | |

Pending before the Court is the Motion for Partial Summary Judgment (ECF No. 68) filed by Plaintiff Andrea B. Gale ("Plaintiff") on November 26, 2013. On December 13, 2013, Defendant CitiMortgage, Inc. ("CitiMortgage") filed its Response (ECF No. 72) and its Objection to Evidence (ECF No. 76) relied upon by Plaintiff in her motion. Defendant Nationstar Mortgage LLC ("Nationstar") and Indispensable Party Federal National Mortgage Association ("Fannie Mae") filed their Response (ECF No. 77) on December 20, 2013. Plaintiff filed an untimely Reply (ECF No. 82) on January 9, 2014.

Also before the Court is the Motion for Summary Judgment (ECF No. 85) filed by Nationstar and Fannie Mae on March 18, 2014. Plaintiff filed her Response (ECF No. 87) on April 14, 2014.

The final motion before the Court is the Motion to Dismiss (ECF No. 89) filed by CitiMortgage on May 29, 2014. Plaintiff filed a Response (ECF No. 91) on June 20, 2014, and CitiMortgage filed its Reply (ECF No. 93) on July 1, 2014.

I.    **BACKGROUND**

On November 29, 2006, Plaintiff entered into a loan agreement with National Bank of Kansas City for a $216,315 loan secured by a Deed of Trust on property located at 251 S. Green Valley Parkway #714, Henderson, Nevada 89012 (the "Property"). (Deed of Trust, Ex. 1 to Am. Complaint, ECF No. 1-4.) Plaintiff defaulted on her obligation under the Deed of Trust when she failed to make the monthly payment due on June 1, 2009. (2010 Notice of Default, Ex. 3 to Am. Complaint, ECF No. 1-4.) On November 1, 2009, CitiMortgage, who serviced the loan for the original lender,[1] entered into a Home Affordable Modification Trial Period Plan with Plaintiff whereby Plaintiff would make monthly payments of $838.75 for one year, and if Plaintiff successfully completed the plan, the parties would enter into a permanent Loan Modification Agreement ("LMA"). (Trial Period Plan, Ex. 2 to Am. Complaint, ECF No. 1-4.)

Plaintiff appears to have successfully made all her required payments under the Trial Period Plan because on October 22, 2010, Plaintiff entered into a LMA with CitiMortgage. (LMA, Ex. 1 to Pl.'s MPSJ, ECF No. 68.) Under the LMA, $47,338.46 of the $245,095.46 that remained outstanding on the loan was deferred and Plaintiff was obligated to begin making monthly payments of $840.66[2] beginning on December 1, 2010. (*Id.*) The LMA also "forever

---

[1] The original lender eventually assigned the Deed of Trust to CitiMortgage on July 29, 2010. (First Assignment of Deed of Trust, ECF No. 77-2.)

[2] The LMA states that the $840.66 monthly payments "[m]ay adjust periodically." (LMA, Ex. 1 to Pl.'s MPSJ, ECF No. 68.)

canceled" several terms in the Deed of Trust, including a term requiring that "[a]ll costs and expenses incurred by Lender in connection with this Agreement, including … attorney's fees, shall be paid by the Borrower." (*Id.* ¶ 6.)  Plaintiff, however, never made a single payment under the LMA. (Nationstar MSJ 4:8, ECF No. 77.)

In November of 2010, CitiMortgage transferred the servicing of the loan to Nationstar. (Pl.'s MPSJ 6:15-17, ECF No. 68); (Nationstar MSJ 2:21, ECF No. 77.)  Following the transfer and Plaintiff's failure to make her first payment on December 1, 2010, Nationstar sent Plaintiff two letters, one dated January 7, 2011 and one dated January 15, 2011, erroneously stating that her loan was past due in the amount of $47,829.40.[3] (Demand Letters, Ex. 2 to Pl.'s MPSJ, ECF No. 68.)  However, Plaintiff also received monthly billing statements from Nationstar indicating that her amounts due each month were $852.37. (Billing Statements, Ex. 3 to Pl.'s MPSJ, ECF No. 68.)  Plaintiff's first billing statement for her December 1, 2010 payment, which is dated November 22, 2010, shows an amount due of $852.37 and indicates a deferred principal amount of $47,838.46.  (*Id.*)  After Plaintiff failed to make her December 1, 2010 payment, the billing statements she received in the following months also contained a charge of $2,048.18 for "legal fees" in addition to her current monthly and past due payments. (*Id.*)

The parties are in some dispute over the exact sequence and level of correspondence between them over the next few months.  However, it is not disputed that from January to August Nationstar continued to send billing statements to Plaintiff indicating that $47,838.46 of the loan's principal was deferred and that Plaintiff owed monthly payments of $852.37 while it simultaneously sent her conflicting demand letters indicating that her loan was past due in amounts that appeared to include the deferred principal. (Billing Statements, Ex. 3 to Pl.'s

---

[3] In her motion, Plaintiff states that she received two initial demand letters in November 2010 and December 2010 respectively, and in its motion, Nationstar states that it sent demand letters in December 2010 and January 2011. (Pl.'s MPSJ 6:17-21, ECF No. 68); (Nationstar MSJ 2:22-24, ECF No. 77.)  However, both motions cite to the January letters attached to Plaintiff's motion when making these statements.

MPSJ, ECF No. 68); (Demand Letters, Ex. 2 to Pl.'s MPSJ, ECF No. 68.)  Additionally, on multiple occasions throughout those months, Plaintiff spoke with agents of Nationstar concerning her loan and was informed that the demand letters were incorrect and that Plaintiff only owed $852.37 for each month's payment.[4] (Pl.'s MPSJ 7:5-7, ECF No. 68); (Nationstar MSJ 3:1-8, 3:21-4:3, ECF No. 77); (Servicing Records, Ex. 4 to Pl.'s MPSJ, ECF No. 68.)  In fact, Plaintiff admits that after she received the initial demand letters stating an incorrect amount due, she "contacted Nationstar immediately and informed them that [the] payment amount was in error.  Nationstar agreed … and stated that it would correct the problem." (Aff. of Pl. ¶ 6, Pl.'s MPSJ, ECF No. 68.)  Despite these communications, however, Plaintiff continued to receive demand letters with the incorrect amount through August of 2011. (Demand Letters, Ex. 2 to Pl.'s MPSJ, ECF No. 68.)  She also continued to refuse to pay any amount on the loan. (Nationstar MSJ 3:23-24, 4:8, ECF No. 77.)

Eventually, on July 8, 2011, Defendant Quality Loan Service Corporation ("Quality Loan"), as trustee for Nationstar entered a Notice of Breach and Default. (2011 Notice of Breach, ECF No. 85-6.)  Later, on June 17, 2012, Quality Loan entered a Notice of Trustee's Sale. (Notice of Trustee's Sale, ECF No. 85-7.)  Subsequently, the Property was sold to Fannie Mae at a trustee's sale on August 3, 2012. (Trustee's Deed upon Sale, ECF No. 85-8.)

Plaintiff initially filed this action in Nevada state court on October 18, 2012, requesting declaratory relief and money damages and seeking to enjoin Defendants from "causing further damage to Plaintiff's title, commencing statutorily defective foreclosures, or preventing her from receiving the benefits that were guaranteed to her under the terms of the LMA." (*Id.* ¶ 85.)

---

[4] Plaintiff also began communicating with someone in the office of Congressman Joe Heck who spoke with Plaintiff and representatives from Nationstar on multiple occasions in an attempt to resolve the confusion over the amount due. (Pl.'s MPSJ 7:8-10, ECF No. 68); (Nationstar MSJ 3:16-20, ECF No. 77); (Servicing Records, Ex. 4 to Pl.'s MPSJ, ECF No. 68.)

On December 4, 2012, Quality Loan[5] removed the action to this Court. (Notice of Removal, ECF No. 1.)  After a hearing and several rounds of briefing, the Court ultimately denied Plaintiff's request for a preliminary injunction. (Order, ECF No. 45.)  Following the Ninth Circuit's affirmance of the denial for a preliminary injunction on appeal (ECF No. 62), the parties filed the current pending motions.

## II.   LEGAL STANDARD

### A. Motion for Summary Judgment Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

---

[5] Quality Loan has since been dismissed as a Defendant from this case by stipulation. (Order on Stip., ECF No. 70.)

the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323– 24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

1    in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is

2    not significantly probative, summary judgment may be granted. *See id.* at 249–50.

3        **B. Motion to Dismiss Standard**

4        Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a

5    cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l*

6    *v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to

7    dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the

8    complaint does not give the defendant fair notice of a legally cognizable claim and the grounds

9    on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering

10   whether the complaint is sufficient to state a claim, the Court will take all material allegations

11   as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v.*

12   *Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

13       "Generally, a district court may not consider any material beyond the pleadings in ruling

14   on a Rule 12(b)(6) motion . . . .  However, material which is properly submitted as part of the

15   complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard*

16   *Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly,

17   "documents whose contents are alleged in a complaint and whose authenticity no party

18   questions, but which are not physically attached to the pleading, may be considered in ruling on

19   a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for

20   summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under Federal Rule

21   of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

22   *Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers

23   materials outside of the pleadings, the motion to dismiss is converted into a motion for

24   summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*,

25   261 F.3d 912, 925 (9th Cir. 2001).

1

## III.     DISCUSSION

2        Plaintiff's Amended Complaint asserts causes of action against various Defendants for

3  (1) statutorily defective foreclosure, (2) breach of contract, (3) violation of Nevada Revised

4  Statutes § 205.372, (4) breach of the implied covenant of good faith and fair dealing, (5)

5  intentional interference with contractual relations, (6) fraudulent misrepresentation, and (7)

6  negligence per se. (Am. Complaint, ECF No. 1-4.)  In her motion, Plaintiff seeks summary

7  judgment on her claims for breach of contract, breach of the implied covenant of good faith and

8  fair dealing, and intentional interference with contractual relations. (Pl.'s MPSJ 9:2-13:9, ECF

9  No. 68.)  In its motion, Nationstar moves for summary judgment on all seven of Plaintiff's

10  claims against it. (Nationstar MSJ 5:19-10:26, ECF No. 77.)  Similarly, in its motion,

11  CitiMortage seeks to dismiss all of Plaintiff's claims except for intentional interference with

12  contractual relations, which Plaintiff has only alleged against Nationstar.[6]

13    **A. Statutorily Defective Foreclosure**

14        Plaintiff alleges that the foreclosure on the Property was defective under the

15  requirements of Nevada Revised Statutes § 107.  However, Plaintiff's claim fails because she

16  did not abide by the requirements of Nevada Revised Statutes § 107.080 in raising her claim.

17  Nevada Revised Statutes § 107.080.5 provides:

18      **Every sale** made under the provisions of this section and other sections of this chapter
    **vests in the purchaser the title of the grantor** and any successors in interest **without**
19      **equity or right of redemption**. A sale made pursuant to this section must be declared
    void by any court of competent jurisdiction in the county where the sale took place if:
20        (a) The trustee or other person authorized to make the sale does not substantially
        comply with the provisions of this section or any applicable provision of NRS
21        107.086 and 107.087;
        (b) Except as otherwise provided in subsection 6, an action is commenced in the
22        county where the sale took place within 45 days after the date of the sale; and

23

24

25

---

[6] As the Court will consider materials outside the pleadings, CitiMortgage's Motion to Dismiss shall be treated
like a Motion for Summary Judgment. *See* FED. R. CIV. P. 12(d); *Arpin*, 261 F.3d at 925.

(c) **A notice of lis pendens providing notice of the pendency of the action is recorded in the office of the county recorder of the county where the sale took place within 15 days after commencement of the action**.

NEV. REV. STAT. § 107.080.5 (2013) (emphasis added). In Nevada, "[a] civil action is commenced by filing a complaint with the court." NEV. R. CIV. P. 3. In 2011, the Nevada legislature amended this subsection to change the words "may be declared void" to "must be declared void." Act of May 20, 2011, A.B. 284, Ch. 81 § 9, 2011 Nev. Stat. 334.

Here, the sale was conducted on August 3, 2012. (Trustee's Deed upon Sale, ECF No. 1-4.) Plaintiff timely filed her original complaint with the state court on October 18, 2012. (Compl., ECF No. 1-2.) However, Plaintiff did not record the notice of lis pendens with the Clark County Recorder until November 30, 2012. (Recorded Lis Pendens, Ex. C to Supp. Opp., ECF No. 42-3.) Therefore, because Plaintiff did not record her lis pendens within 30 days of commencing this action, this Court is unable to declare the sale void.[7] *See Miller v. Wells Fargo Bank*, 2:10-CV-363 JCM, 2010 WL 2697082, at *2 (D. Nev. July 6, 2010) ("[T]he plaintiffs were required to record a lis pendens in the county where the sale took place within thirty days of filing their action. Plaintiffs failed to do so. Therefore, this court does not have the statutory authority to void the trustee's sale."); *Margulis v. Mortgage Elec. Registration Sys., Inc.*, 2:11-CV-1050-GMN-LRL, 2012 WL 760785, at *6 (D. Nev. Mar. 6, 2012) ("Plaintiff has not filed proof that he recorded a notice of lis pendens within 30 days of the commencement of this action. Thus the Court would be unable to declare the sale void under N.R.S. § 107.080(5).").

Accordingly, the Court grants Nationstar and CitiMortgage summary judgment on this claim.

---

[7] Plaintiff appears to concede that her claim for statutorily defective foreclosure fails because she does not refute the arguments of either Nationstar or CitiMortgage on this point in either of her response briefs to their motions. *See* (Pl.'s Resp. to Nationstar's MSJ, ECF No. 87); (Pl.'s Resp. to CitiMortgage's MTD, ECF No. 91.)

**B.  Breach of Contract**

A claim for breach of contract must allege (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach. *See* Restatement (Second) of Contracts § 203 (2007); *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement").  An enforceable contract requires: (1) an offer and acceptance, (2) meeting of the minds, and (3) consideration. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

In her Amended Complaint, Plaintiff asserts that CitiMortgage breached the LMA by selling Plaintiff's mortgage to Nationstar "less than two weeks after entering into [the] LMA," and that Nationstar breached the LMA by "demanding a first month's payment in an amount of $47,829.40." (Am. Complaint ¶¶ 47-49, ECF No. 1-4.)[8]  Regarding Plaintiff's breach of contract claim against CitiMortgage, Plaintiff has failed to sufficiently show how CitiMortgage's selling of the loan to Nationstar two weeks after its execution constituted a breach of the LMA.  (LMA, Ex. 1 to Pl.'s MPSJ, ECF No. 68.)  Neither Plaintiff's Amended Complaint nor any of her briefs point to a provision of the LMA that was allegedly violated or provide any explanation for why this sale is a breach of the agreement. *See generally* (Am. Complaint, ECF No. 1-4); (Pl.'s MPSJ, ECF No. 68); (Pl.'s Resp. to Nationstar's MSJ, ECF

---

[8] Plaintiff also asserts in her motion that both Nationstar and CitiMortgage breached the LMA when Nationstar sought $2,049.18 for "legal fees" in its billing statements. (Pl.'s MPSJ 9:17-10:10, ECF No. 68.)  However, because Plaintiff did not raise this theory in her complaint, she cannot now raise it at the summary judgment stage. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000); *see also Paxton v. City of Montebello*, 712 F. Supp. 2d 1007, 1011 n.8 (C.D. Cal. 2010) ("to the extent plaintiffs seek or contest summary judgment on the ground City did not promptly reemploy them in violation of USERRA, they cannot do so since they do not raise this issue in their complaint.") (internal citations omitted); *Torres v. City of Madera*, 655 F.Supp.2d 1109, 1128 (E.D. Cal. 2009) ("If the complaint focuses on one theory of liability, the plaintiff cannot turn around and surprise the defendant at the summary judgment stage with a new theory of liability.").

No. 87); (Pl.'s Resp. to CitiMortgage's MTD, ECF No. 91.)  More importantly, however, the compliance agreement signed by Plaintiff that accompanied the LMA specifically states that Plaintiff "agrees to fully cooperate with any reasonable requests by [CitiMortgage] … (2) to enable [CitiMortgage] to sell, convey, seek a guaranty or obtain insurance for, or market [the LMA] to any purchaser." (LMA, Ex. 1 to Pl.'s MPSJ, ECF No. 68.)  Therefore, the selling of a loan was expressly permitted under the terms of the LMA and could not be a breach of the agreement.  Accordingly, the Court grants CitiMortgage summary judgment on this claim.

Regarding Plaintiff's breach of contract claim against Nationstar, Plaintiff has not put forward sufficient evidence to entitle her to a directed verdict.  In order to bring a breach of contract claim, Plaintiff must show that she performed or was excused from performance under the contract. *See Calloway*, 993 P.2d at 1263.  Plaintiff does not dispute that she failed to make any payments under LMA, and thereby failed to perform under the LMA. (Pl.'s Resp. to CitiMortgage's MTD 7:19-8:10, ECF No. 91.)  Instead, Plaintiff argues that Nationstar breached the contract first in sending the inaccurate demand letter, implying that this breach excused her later breach in failing to pay. (*Id.*)  However, while "[a] material breach by one party to a contract may excuse further performance by another party to the contract," *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1193 (D. Nev. 2006) (citing *Young Elec. Sign Co. v. Fohrman*, 466 P.2d 846, 847 (Nev. 1970)), there appears to be a genuine dispute as to whether Plaintiff was in breach before she received the first incorrect demand letter.

Plaintiff's first payment under the LMA was due on December 1, 2010, and Plaintiff asserts that she received the first demand letter in November 2010. (LMA, Ex. 1 to Pl.'s MPSJ, ECF No. 68); (Pl.'s MPSJ 6:17-21, ECF No. 68.)  Nationstar, however, states that it sent the first demand letter in December 2010, and neither side has provided a copy of a demand letter dated before January 7, 2011. (Nationstar MSJ 2:22-24, ECF No. 77.)  Therefore, whether

Plaintiff's breach in failing to make her December payment occurred after Nationstar's first inaccurate demand letter is a disputed material fact.

Moreover, "[w]hether a party has breached a contract and whether the breach is material are questions of fact." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 536 (9th Cir. 2011) (citing *Hoffman v. Eighth Judicial Dist. Court*, 523 P.2d 848, 850 (Nev. 1974)); *see also Thornton v. Agassiz Const., Inc.*, 799 P.2d 1106, 1108 (Nev. 1990) ("Materiality is generally a question of fact."). Neither party has presented any law indicating that a mortgagee's sending of a letter demanding an "excessive amount" from the mortgagor under the loan agreement does or does not constitute a material breach of the loan agreement as a matter of law. Therefore, there still exist genuine issues of material fact concerning whether Nationstar's sending of incorrect demand letters constituted material breaches of the LMA that occurred before Plaintiff's breach for failing to pay.

Accordingly, the Court denies Nationstar and Plaintiff summary judgment on this claim.

## C. Violation of Nevada Revised Statutes § 205.372

Nevada Revised Statutes § 205.372 is a criminal statute making mortgage lending fraud a crime in Nevada. Generally, a violation of a criminal statute does not create a private right of action. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1972) ("a private citizen lacks judicially cognizable interest in the prosecution ... of another."); *see also Josephson v. EMC Mortgage Corp.*, 2:10-CV-336 JCM PAL, 2010 WL 4810715, at *2 (D. Nev. Nov. 19, 2010) ("[T]hey allege … violations of NRS 205.372 and 205.390. However, as the statutes are criminal statutes, the plaintiffs do not have a private right of action for violations of them."). Nevada Revised Statutes § 205.372 does not provide for a private cause of action, and instead expressly vests the right to seek criminal or civil penalties under the statute with the state attorney general. *See* NEV. REV. STAT. § 205.372.6 ("This penalty must be recovered in a civil

1    action, brought in the name of the State of Nevada by the Attorney General.").  Therefore,

2    Plaintiff's claims based on violations of Nevada Revised Statutes § 205.372 must fail.[9]

3           Accordingly, the Court grants Nationstar and CitiMortgage summary judgment on this

4    claim.

5    **D. Breach of the Implied Covenant of Good Faith and Fair Dealing**

6           To state a claim of breach of the covenant of good faith and fair dealing, Plaintiff must

7    allege: (1) Plaintiff and Defendants were parties to an agreement; (2) Defendants owed a duty

8    of good faith to the Plaintiff; (3) Defendants breached that duty by performing in a manner that

9    was unfaithful to the purpose of the contract; and (4) Plaintiff's justified expectations were

10   denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).  In Nevada, an implied covenant of

11   good faith and fair dealing exists in every contract, *Consol. Generator–Nevada v. Cummins*

12   *Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998), and a plaintiff may assert a claim for its

13   breach if the defendant deliberately contravenes the intention and spirit of the agreement,

14   *Morris v. Bank Am. Nev.*, 886 P.2d 454 (Nev. 1994).  The covenant of good faith and fair

15   dealing "only applies after a binding contract is formed." *Crellin Techs., Inc. v. Equipmentlease*

16   *Corp.*, 18 F.3d 1, 10 (1st Cir. 1994).

17          In her Amended Complaint, Plaintiff asserts a cause of action for breach of the implied

18   covenant of good faith and fair dealing against both Nationstar and CitiMortgage based solely

19   on Nationstar's "demanding a payment well in excess of, and in violation of, the terms set forth

20   in the LMA." (Am. Complaint ¶ 57, ECF No. 1-4.)[10]  Plaintiff, however, provides no

21

22   _____

23   [9] Plaintiff appears to concede that she does not have a private cause of action under the statute because she does
     not refute the arguments of either Nationstar or CitiMortgage on this point in either of her response briefs to their
     motions. *See* (Pl.'s Resp. to Nationstar's MSJ, ECF No. 87); (Pl.'s Resp. to CitiMortgage's MTD, ECF No. 91.)

24
     [10] Plaintiff also asserts in her motion that CitiMortgage breached the implied covenant of good faith and fair
25   dealing when Nationstar's included $2,049.18 for "legal fees" in its billing statements. (Pl.'s MPSJ 11:5-23, ECF
     No. 68.)  Again, however, because Plaintiff did not raise this theory in her complaint, she cannot now raise it at
     the summary judgment stage. *See supra* note 8, at 10.

explanation in her Amended Complaint or her briefs for how Nationstar's actions in demanding payment in excess of the required amount under the LMA would constitute a breach by CitiMortgage. There is simply nothing in Plaintiff's Amended Complaint explaining her theory for CitiMortgage's liability on this claim beyond the conclusory statement that "Defendants unfairly interfered with Plaintiff's right to receive the benefits of the contract." (*Id.*) Therefore, Plaintiff has failed to make a sufficient showing to establish that CitiMortgage breached the implied covenant of good faith and fair dealing when Nationstar sent an incorrect demand letter. Accordingly, the Court grants CitiMortgage summary judgment on this claim.

Additionally, to the extent Plaintiff alleges claims against either CitiMortgage or Nationstar for tortious, rather than contractual, breach of the implied covenant of good faith and fair dealing, those claims must fail. "[A]n action in tort for breach of the covenant arises only in rare and exceptional cases when there is a special relationship between the victim and tortfeasor." *Ins. Co. of the W. v. Gibson Tile Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006) (internal quotations omitted). "A special relationship is characterized by elements of public interest, adhesion, and fiduciary responsibility." (*Id.*) (internal quotations omitted). Nevada law, however, does not recognize a fiduciary relationship between a borrower and a lender. *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 882 (9th Cir. 2007) (noting the Nevada Supreme Court would not recognize a fiduciary relationship as a matter of law between a lender and borrower). Accordingly, to the extent Plaintiff's claim for breach of the implied covenant of good faith and fair dealing sounds in tort, the Court grants Nationstar and CitiMortgage summary judgment on this claim.

Regarding Plaintiff's claim against Nationstar for contractual breach of the implied covenant of good faith and fair dealing, Plaintiff has not put forward sufficient evidence to entitle her to a directed verdict. Whether a party has acted in good faith is a question of fact. *Consol. Generator-Nevada, Inc.*, 971 P.2d at 1256. As with Plaintiff's claim for breach of

contract, neither party has presented any law indicating that Nationstar's inaccurate demand for payment does or does not constitute a material breach of the covenant of good faith and fair dealing as a matter of law.  Therefore, a genuine issue of material fact remains regarding whether Nationstar's "excessive" demand breached the covenant.  Accordingly, the Court denies Plaintiff and Nationstar summary judgment this claim.

**E.  Intentional Interference with Contractual Relations**

To prevail on a tortious interference claim in Nevada, a plaintiff must establish: (1) a valid and existing contract, (2) the defendant's knowledge of the contract, (3) intentional acts intended or designed to disrupt the contractual relationship, (4) actual disruption of the contract, and (5) resulting damage. *See J.J. Industries, LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003). Regarding the third element, the defendant's "mere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff." *Id.* at 1268.

In her Amended Complaint, Plaintiff alleges that "Nationstar's excessive payment demand was a breach of the LMA[] and was an intentional act designed to disrupt the contractual relationship established between Plaintiff [and CitiMortgage] under the LMA." (Am. Complaint ¶ 62, ECF No. 1-4.)  However, the Court finds that Plaintiff has failed to sufficiently establish that Nationstar intentionally disrupted the LMA by sending the demand letters.

Plaintiff has not produced any evidence that Nationstar intentionally disrupted the LMA. Plaintiff's Amended Complaint contains only the conclusory statement cited in the preceding paragraph, and Plaintiff's motion merely argues that Nationstar knew of the LMA and admitted that the amount sought in the demand letters was wrong before again conclusively stating that she is therefore entitled to summary judgment.  Merely knowing of the existence of a contract,

however, is insufficient to establish intent to disrupt a contractual relationship. *J.J. Industries, LLC*, 71 P.3d at 1268.  Moreover, Nationstar's nearly immediate communications with Plaintiff that the amount sought in the demand letters was wrong show that Nationstar did not intend to disrupt the LMA. (Aff. of Pl. ¶ 6, Pl.'s MPSJ, ECF No. 68) (stating that Nationstar's agent told Plaintiff the amount sought in the demand letter was incorrect); (Billing Statements, Ex. 3 to Pl.'s MPSJ, ECF No. 68) (showing the differed principal amount and seeking only $852.37 in monthly payments).  Therefore, Plaintiff has failed to establish her claim for intentional interference with contractual relations or show that there is any genuine issue of material fact for this claim.

Accordingly, the Court grants Nationstar summary judgment and denies summary judgment to Plaintiff on this claim.

**F. Fraudulent Misrepresentation**

To state a claim for fraud or intentional misrepresentation, a plaintiff must allege three factors: (1) a false representation by the defendant that is made with either knowledge or belief that it is false or without sufficient foundation; (2) an intent to induce another's reliance; and (3) damages that result from this reliance. *See Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007). A claim of "fraud or mistake" must be alleged "with particularity." FED. R. CIV. P. 9(b).  A complaint alleging fraud or mistake must include allegations of the time, place, and specific content of the alleged false representations and the identities of the parties involved. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

"A defendant may also be found liable for misrepresentation even when the defendant does not make an express misrepresentation, but instead makes a representation which is misleading because it partially suppresses or conceals information." *Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992) (quoting *Epperson v. Roloff*, 719 P.2d 799, 803 (Nev. 1986)). There are five essential elements to a claim for fraudulent concealment under Nevada law:

(1) The defendant concealed or suppressed a material fact;
(2) The defendant was under a duty to disclose the fact to the plaintiff;
(3) The defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; that is, the defendant concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than she would if she knew the fact;
(4) The plaintiff was unaware of the fact and would have differently if she had known of the concealed or suppressed fact;
(5) And, as a result of the concealment or suppression of the fact, the plaintiff sustained damages.

*Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 110 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001).

The fraudulent representations alleged by Plaintiff are that CitiMortgage "omitted the material fact that [it] was about to sell [Plaintiff's] mortgage loan off to Nationstar" at the time the LMA was executed and that Nationstar "fraudulently misrepresented a material fact by stating that [Plaintiff] was required to pay $47,829" in its demand letters. (Am. Complaint ¶¶ 65, 67, ECF No. 1-4.)  The undisputed facts, however, show that Plaintiff has failed to sufficiently establish multiple essential elements for each of her fraud claims.

First, regarding Plaintiff's claim against Nationstar that the demand letters with incorrect payment amounts were a fraudulent misrepresentation, Plaintiff has failed to establish intent to induce reliance or reliance that resulted in damages.  The undisputed facts show that immediately after Plaintiff received the first inaccurate demand letter, she spoke with an agent of Nationstar who informed her that the demand letter was incorrect and that she should pay the amount due under the LMA. (Aff. of Pl. ¶ 6, Pl.'s MPSJ, ECF No. 68.)  Likewise, at around the same time she received the demand letter, Plaintiff also received a monthly billing statement from Nationstar indicating that her amounts due each month were $852.37. (Billing Statements, Ex. 3 to Pl.'s MPSJ, ECF No. 68.)  These almost immediate corrections of the inaccurate demand letter show that Nationstar was not intending to have Plaintiff rely on the inaccurate demand letters.  Moreover, Plaintiff never actually relied on the payment amount in the demand

letters because she never submitted any payment to Nationstar on her loan. (Nationstar MSJ 4:8, ECF No. 77.)  Therefore, she cannot show that she suffered damages because of her reliance on the incorrect demand letters.  As a result, Plaintiff has failed to establish her claim for fraudulent misrepresentation or show that there is any genuine issue of material fact for this claim.

Regarding Plaintiff's claim against CitiMortgage that it omitted the material fact at the time the LMA was executed that it was about to sell Plaintiff's loan, Plaintiff has failed to establish that the fact was material, that CitiMortgage was under a duty to disclose this fact, that it intended to defraud Plaintiff, or that she would have acted differently had she known of the prospective sale.  Plaintiff's Amended Complaint fails to even allege these elements beyond the conclusory statements that "CitiMortgage['s] agent suppressed and omitted the material fact that [it] was about to sell her mortgage loan" and that "Plaintiff detrimentally relied on the false representation." (Am. Complaint ¶¶ 65, 66, ECF No. 1-4.)  Therefore, she has failed to establish her claim for fraudulent concealment or show there is any genuine issue of material fact for this claim.

Accordingly, the Court grants Nationstar and CitiMortgage summary judgment on Plaintiff's fraudulent misrepresentation claims.[11]

## G. Negligence Per Se

"A claim for negligence in Nevada requires that the plaintiff satisfy four elements: (1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175 (Nev. 2008).  A violation of a statute that constitutes negligence per se, "establishes the duty and breach elements of negligence."  *Ashwood v. Clark*

---

[11] As with her statutory claims, Plaintiff appears to concede that Nationstar and CitiMortgage should be granted summary judgment on her fraudulent misrepresentation claims because she does not refute the arguments of either defendant on these claims in either of her response briefs to their motions. *See* (Pl.'s Resp. to Nationstar's MSJ, ECF No. 87); (Pl.'s Resp. to CitiMortgage's MTD, ECF No. 91.)

*Cnty.*, 930 P.2d 740, 744 (Nev. 1997).  However, the violation of a statute only constitutes negligence per se "if the injured party belongs to the class of persons that the statute was intended to protect, and the injury suffered is of the type the statute was intended to prevent. *Vega v. E. Courtyard Associates*, 24 P.3d 219, 221 (Nev. 2001).

The two statutes that Plaintiff alleges have been violated in her negligence per se claim are Nevada Revised Statutes § 205.372 and § 107.080. (Am. Complaint ¶¶ 69-72, ECF No. 1-4.)  As the Court has already found that Plaintiff's claims for violations of these statutes fail, her negligence per se claim must also fail. *See supra* Sections III.A., III.C.[12]  Accordingly, the Court grants Nationstar and CitiMortgage summary judgment on this claim.[13]

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 68) is **DENIED**.

**IT IS FURTHER ORDERED** that Nationstar and Fannie Mae's Motion for Summary Judgment (ECF No. 85) is **GRANTED in part and DENIED in part**.  Nationstar is granted summary judgment on Plaintiff's claims for statutorily defective foreclosure, violation of Nevada Revised Statutes § 205.372,  tortious breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, fraudulent misrepresentation, and negligence per se.  Plaintiff's surviving claims against Nationstar are for breach of contract and contractual breach of the implied covenant of good faith and fair dealing.

---

[12] Again, Plaintiff appears to concede that she has no valid cause of action under either statute and therefore no negligence per se claim because she does not refute the arguments of either Nationstar or CitiMortgage on these claims in either of her response briefs to their motions. *See* (Pl.'s Resp. to Nationstar's MSJ, ECF No. 87); (Pl.'s Resp. to CitiMortgage's MTD, ECF No. 91.)

[13] The only claims Plaintiff alleges in her Amended Complaint against Defendant Cal-Western Reconveyance Corporation ("Cal-Western") are for statutorily defective foreclosure and negligence per se. *See* (Am. Complaint, ECF No. 1-4.)  Because the Court has found that both of these claims must fail as a matter of law, Cal-Western is granted summary judgment on these claims.

**IT IS FURTHER ORDERED** that CitiMortgage's Motion to Dismiss (ECF No. 89) is converted to a motion for summary judgment and **GRANTED**.  CitiMortgage is granted summary judgment on all of Plaintiff's claims against it.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __20__ day of August, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge